IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wayne Thomas,                        :
                                     :
                    Petitioner       :
                                     :
            v.                       :  No. 235 M.D. 2022
                                     :  Submitted: January 27, 2023
K. Smith, Major of Security at       :
Dept. of Corrections; Ken           :
Goodman, Deputy Supt. of Facility    :
Security; Kevin Ramson, Supt.        :
Chairperson Committee Commissary     :
Central DOC,                         :
                                     :
                    Respondents      :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED: October 19, 2023


        Before this Court are the preliminary objections (POs) of K. Smith,

Major of Security; Ken Goodman, Deputy Superintendent of Facility Security; and

Kevin Ramson, Superintendent Chairperson Committee Commissary, all of whom

are employed by the Department of Corrections (Department) (collectively,

Respondents) to Wayne Thomas's (Inmate) Petition for Review (PFR) filed in this

Court's original jurisdiction. For the reasons that follow, we overrule in part and

sustain in part Respondents' POs and dismiss Inmate's PFR.

## I. Background

On April 13, 2022, Inmate, representing himself, filed his PFR seeking the ability to purchase a word processor typewriter with memory capacity. Inmate, who is housed at the State Correctional Institution at Albion (SCI-Albion), states that he initially pursued grievance procedures by filing an administrative remedies form claiming that he was deprived of the ability to purchase a typewriter in violation of his constitutional rights. An SCI-Albion grievance officer responded that the prison commissary was in the process of obtaining a new vendor contract for the sale of typewriters to inmates. The grievance officer advised that, once the contract was agreed upon, a catalog and price for typewriters for purchase would be made available.

Inmate filed another administrative grievance on the basis that he and other SCI-Albion inmates were not notified in advance that typewriters would be temporarily unavailable. The Department denied relief on the basis that typewriters were now available for purchase. Inmate then appealed the denial challenging the choice of vendor and the cost of the typewriters, claiming the set price of $400 was double what an outside vendor would charge. The Department denied the appeal explaining that Policy DC-ADM 815 (Policy)[1] states that if an item is available through the commissary, it cannot be purchased from an outside vendor.

Inmate attempted to purchase a Swintec 2416 typewriter and was informed that it was no longer available through the commissary for purchase, but that the Swintec 2410 would be available from the vendor via outside purchase.

---

[1] We may take judicial notice of the Department's policies found on its website at: https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx. (Last visited October 18, 2023). *Figueroa v. Pennsylvania Board of Probation and Parole*, 900 A.2d 949, 950 n.1 (Pa. Cmwlth. 2006).

Inmate asserts: "The difference being there is no memory in the 2410 typewriter. The decision to not allow memory was a determination made by [Department] Security at Central Office." PFR, Exhibit G.

Inmate filed this action against Respondents asserting that they violated his due process and equal protection rights, deprived him of access to the courts, and committed willful misconduct. More particularly, he alleges that Respondents, identified as part of the Department's Security and/or "Commissary Committee," have committed torts and violated his constitutional rights by creating, adopting, and enforcing the Policy that bans the sale of typewriters with memory capacity to inmates, and by contracting with the Swintec Company as the exclusive vendor for the sale of all typing merchandise to inmates statewide. According to Inmate, Respondents have offered no compelling or rational governmental interests to support the ban on word processor typewriters; any implied "security risk" reason lacks legitimate penological justification. Inmate claims that Respondents violated his due process rights by failing to provide him and other inmates with advance notice of the Policy before the ban of word processor typewriters went into effect. Inmate claims that the Policy limitation to offer only a standard typewriter without memory capability deprives him of meaningful access to the courts. He further complains that the limitation violates his equal protection rights because other devices with memory are readily available to inmates such as an electric keyboard and an electronic tablet and there is no basis for this dissimilar treatment. Finally, he asserts that Respondents have committed tortious acts by failing to make proper contractual decisions and by exclusively contracting with the Swintec Company that sells standard typewriters for $400, which he asserts is not affordable and double the

3

price of the competition. Inmate seeks a declaratory judgment allowing him to purchase a word processor typewriter.

In response to the PFR, Respondents filed POs in the nature of demurrer. Therein, Respondents challenge the PFR's legal sufficiency on several grounds. First, Respondents assert that all claims against them should be dismissed based on lack of personal involvement. Next, Inmate's due process claim should be dismissed because the grievance process was available and utilized by him. Inmate's access to the courts claim and his equal protection claim should both be dismissed for failure to state a claim upon which relief can be granted. Finally, Respondents argue Inmate's tort claim should be dismissed because Respondents are protected by sovereign immunity.

Inmate responded by filing a motion to file an amended pleading with an attached "First Amended Pleading." This Court granted Inmate "leave to file and serve a complete Amended Petition for Review, or a proper Response to [the POs], within 30 days from the exit date of this Order." Commonwealth Court Order, 6/15/2022. Inmate filed an answer to the POs.

## II. POs

In ruling on POs, "we accept as true all well-pleaded material allegations . . . and any reasonable inferences that we may draw from the averments." *Armstrong County Memorial Hospital v. Department of Public Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013). However, we are not required to accept as true "legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Id*. For this Court to sustain POs, "it must appear with certainty that the law will permit no recovery[.]" *McCord v.*

4

*Pennsylvania Gaming Control Board*, 9 A.3d 1216, 1219 (Pa. Cmwlth. 2010). If there is any doubt, this Court should overrule the POs. *Id*. This Court "may sustain a demurrer only when a petitioner has failed to state a claim for which relief may be granted." *Armstrong*, 67 A.3d at 170. We address each PO in turn.

## A. Absence of Personal Involvement

First, Respondents argue that the PFR does not make any factual averments reflecting their personal involvement with regard to the denial of a word processor typewriter. We do not agree.

To begin, Section 1983 of the Civil Rights Act of 1871 (Section 1983) provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any [s]tate . . . subjects, or causes to be subjected, any citizen of the United States [(U.S.)] or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. §1983. "To state a claim under [Section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the [U.S.], and must show that the alleged deprivation was committed by a person acting under color of state law." *Hill v. Pennsylvania Department of Corrections*, 271 A.3d 569, 573-74 (Pa. Cmwlth. 2022) (quoting *West v. Atkins*, 487 U.S. 42, 48, (1988)) (emphasis omitted). "Section 1983 claims may be brought in the courts of this Commonwealth and are not subject to state sovereign immunity defenses." *Watkins v. Pennsylvania Department of Corrections*, 196 A.3d 272, 274 (Pa. Cmwlth. 2018).

5

"[P]ersonal involvement of defendants in an alleged constitutional violation is a prerequisite under Section 1983." *Rivera v. Silbaugh*, 240 A.3d 229, 237 (Pa. Cmwlth. 2020) (citations omitted). "To maintain a Section 1983 claim, an inmate must allege that each defendant was directly and personally responsible for the purported conduct and establish fault and causation on the part of each defendant." *Id.* "[P]ersonal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence." *Bush v. Veach*, 1 A.3d 981, 986 (Pa. Cmwlth. 2010) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Such allegations "must be made with appropriate particularity." *Id.* However, liability cannot be predicated solely on the operation of respondeat superior. *Bush*, 1 A.3d at 986.

In his PFR, Inmate alleges that Respondents "colluded and conspired" together in the creation, adoption, and/or implementation of the Policy. PFR, ¶13. He also alleges that these individuals are responsible for contracting with Swintec Company for the sale of typewriters to inmates. PFR, ¶15. Inmate further alleges that two of the Respondents are in charge of Security and one is a member of the Department's Commissary Committee. According to the exhibits attached to the PFR, the Department advised Inmate that he could address any requests seeking "further explanation on the removal of memory for the Swintec typewriter," to the "Commissary Committee Chairperson, Superintendent at SCI Dallas," which Inmate has identified as Respondent Ramson. PFR, Exhibit J. The Department further advised: "The decision to not allow memory was a determination made by DOC Security at Central Office." PFR, Exhibit G. In response to a request seeking the name and rank of the person in charge of the Department "Security at Central Office," the Department informed Inmate that that person was Respondent "Major

6

K. Smith." PFR, Exhibit H. The Department also identified Respondent Ken Goodman, Deputy Superintendent, Bureau of Facility Security and Special Operations. PFR, Exhibit I. Accepting the allegations in the PFR and exhibits attached thereto as true, Inmate has alleged a sufficient connection between the individual Respondents and the denial of his asserted right to purchase a word processor typewriter. Therefore, we overrule this PO.

### B. Due Process

Next, Respondents argue that Inmate's procedural due process claims regarding lack of notice should be dismissed because the grievance process was available and utilized by him. We agree.

The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, U.S. Const. amend. XIV, prohibits the deprivation of "life, liberty, or property, without due process of law." As this Court has explained:

> When a prison official confiscates a prisoner's property in an allegedly unauthorized way, whether it be negligently or intentionally, due process requires only the existence of an adequate post-deprivation remedy because it is not feasible for a prison to provide a hearing prior to taking property that is perceived to be contraband or against prison regulations.

*Shore v. Pennsylvania Department of Corrections*, 168 A.3d 374, 383 (Pa. Cmwlth. 2017).

Here, no property was actually confiscated from Inmate. Inmate was merely deprived of his ability to purchase a word processor typewriter. Although Inmate was not provided with advance notice of the prohibition, he was accorded a post-deprivation remedy. Inmate not only acknowledges that he pursued redress through the Department's grievance procedures, but he attached the grievance

7

decisions he received to his PFR. These decisions show that Inmate received due process. Thus, we sustain Respondents' PO to Inmate's due process claim.

### C. Access to the Courts

Next, Respondents assert that Inmate's access to the courts claim should be dismissed for failure to state a claim upon which relief can be granted. Again, we agree.

Prison inmates have a constitutional right of meaningful access to law libraries, legal materials, and legal services. *Bounds v. Smith*, 430 U.S. 817, 821-25 (1977); *accord Johnston v. Lehman*, 609 A.2d 880, 881-82 (Pa. Cmwlth. 1992). "[C]laims regarding denial of a lamp, typewriter, and access to a photocopier, do not involve denial of 'direct' access to legal materials or to the courts, but may properly be construed as denial of materials or services peripheral to that access." *Johnston*, 609 A.2d at 882. To establish a *Bounds* violation, an inmate must show an "actual injury" by showing that the denial or "alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). An inmate cannot simply show that the prison's law library or legal assistance program is "subpar in some theoretical sense." *Id.*

Inmate has not alleged that his inability to purchase a word processor typewriter has caused an actual injury in his litigation efforts. In fact, we note that Inmate's handwritten PFR, answer, and brief have all been accepted by this Court. We, therefore, conclude that Inmate has failed to state a cause of action related to an alleged denial of access to courts. Thus, we sustain Respondents' PO regarding access to courts.

## D. Equal Protection

Respondents further assert that Inmate's equal protection claim should be dismissed for failure to state a claim upon which relief can be granted. We agree.

The Equal Protection Clause of the U.S. Constitution provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. A plaintiff asserting equal protection claim under the "class of one" theory must allege that "he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Rivera*, 240 A.3d at 242 (citations omitted).

Here, Inmate does not allege that he was treated differently from other inmates. He does not allege that he was denied the ability to purchase a word processor typewriter while other similarly situated inmates were not. Rather, he alleges that Respondents, by banning word processor typewriters with memory capability but allowing other electronic devices with memory capability, such as keyboards and tablets, are treating these similar objects differently without any rational government interest. PFR, ¶16. *"Persons*," not objects, are entitled to equal protection. U.S. Const. amend. XIV, §1 (emphasis added). The Policy applies to all inmates. Department Policy DC-ADM-815; *see* also PFR, ¶¶ 7, 13, 16, Exhibit K and L. Therefore, Inmate fails to properly state an equal protection claim.

## E. Sovereign Immunity[2]

Lastly, Respondents assert that they are entitled to sovereign immunity with respect to any intentional tort claims raised because the acts complained of were committed within the scope of their duties. We agree.

Generally, sovereign immunity protects Commonwealth officials and employees acting within the scope of their duties from civil liability. 1 Pa. C.S. §2310; *Kull v. Guisse*, 81 A.3d 148, 154 (Pa. Cmwlth. 2013). Sovereign immunity has been waived in limited situations involving the negligence of a Commonwealth official or employee acting within the scope of his employment. 42 Pa. C.S. §8522; *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992). In addition, an employee is liable for willful misconduct and intentional torts committed outside the scope of his employment. *Kull*, 81 A.3d at 157-58. An employee acts within the scope of his employment when he performs his assigned task; when the conduct occurs within the authorized time and place of employment; and when the conduct serves the employer. *Hinton v. Beers*, 274 A.3d 777 (Pa. Cmwlth.), *appeal denied*, 284 A.3d 120 (Pa. 2022).

Here, Inmate has identified Respondents as employees of the Department. Although Inmate has asserted both intentional and negligent acts, a

---

[2] Under Pa.R.Civ.P. 1030(a), the assertion of immunity is an affirmative defense that must be pled in a responsive pleading as new matter. However, courts allow an exception where the defense is "clearly applicable on the face of the complaint." *Minor v. Kraynak*, 155 A.3d 114, 121 (Pa. Cmwlth. 2017) (citation omitted). Where the petitioner does not object to a PO that raises sovereign immunity, the court may rule on the sovereign immunity issue. *Id.*; *see Smolsky v. Pennsylvania General Assembly*, 34 A.3d 316, 321 n.7 (Pa. Cmwlth. 2011) (holding that courts have ruled on POs raising sovereign immunity where a petitioner did not object to improper procedure).

plain reading of his assertions reveal that he only alleges intentional acts.[3] Specifically, Inmate alleges that Respondents committed "willful misconduct" by acting "in collusion and conspiracy" with each other to adopt a new policy which is carried out by the commissary to deny "the sale of typewriters which have a memory capacity" to inmates. PFR, ¶¶13, 15. He further alleges that they contracted with the Swintec Company for the sale of typewriters. PFR, ¶15. Inmate does not allege that Respondents acted outside the scope of their employment in taking these actions. To the contrary, Inmate alleges Respondents operated as state agents, under the color of law for the Department. PFR, ¶17. The alleged conduct of creating, adopting, and/or implementing a Departmental policy and contracting with vendors for the commissary goods are Departmental duties. We, therefore, conclude that Inmate's tort claims do not overcome sovereign immunity. Thus, we sustain Respondents' PO.

### III. Conclusion

Accordingly, with the exception of Respondents' PO based on lack of personal involvement, we sustain Respondents' other POs and dismiss Inmate's PFR.

MICHAEL H. WOJCIK, Judge

---

[3] Specifically, Inmate "avers the negligence and malfeasance of [] Respondents['] failure not to make proper contractual decisions *is the result of willful misconduct . . . .*" PFR, ¶15 (emphasis added). Even if Inmate adequately pleaded a negligence claim, it would not fit within any of the enumerated exceptions to sovereign immunity. *See* Section 8522(b) of the Judicial Code, 42 Pa. C.S. §8522(b).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wayne Thomas,              :
                                 :
             Petitioner    :
                                 :
             v.             : No. 235 M.D. 2022
                                 :
K. Smith, Major of Security at   :
Dept. of Corrections; Ken        :
Goodman, Deputy Supt. of Facility :
Security; Kevin Ramson, Supt.   :
Chairperson Committee Commissary :
Central DOC,                 :
                                 :
          Respondents  :

## **O R D E R**

AND NOW, this <u>19</u><sup>th</sup> day of <u>October</u>, 2023, Respondents' preliminary objections are SUSTAINED IN PART and OVERRULED IN PART, and Petitioner's Petition for Review is DISMISSED.

_____
MICHAEL H. WOJCIK, Judge