# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory Dunbar,                          :
               Petitioner         :
                                      :
        v.                               :
                                        :
John E. Wetzel, Secretary for            :
Pa. Dept. of Corrections,                :   No. 75 M.D. 2019
               Respondent         :   Submitted: July 5, 2019


OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                               FILED:  January 21, 2020


        Gregory Dunbar (Dunbar) petitions this Court, *pro se*, seeking review in our original jurisdiction of his inmate misconduct finding and an order to void and correct certain provisions of the Commonwealth of Pennsylvania, Department of Corrections' – Administrative Directive 801 ("DC-ADM 801"), effective July 2, 2015, relating to inmate discipline implemented by the Secretary of Corrections, of the Pennsylvania Department of Corrections (Department), John E. Wetzel, acting in his official capacity (Secretary).[1]  Before us are the preliminary objections filed by the Secretary in the nature of a demurrer[2] and the preliminary objections filed by

---

[1] DC-ADM 801 is a policy established by the Secretary of the Department to provide notice to inmates of "prohibited behavior," to provide a "fundamentally fair hearing process" and to establish "consistent sanctions" for failure to abide by Department rules and regulations.  *See* DC-ADM 801 (III).  We take judicial notice of DC-ADM 801, which appears on the Department's official website at:
https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/801%20Inmate%20Discipline.pdf.  (last visited Jan. 16, 2020).  *See Figueroa v. Pa. Bd. of Prob. & Parole*, 900 A.2d 949, 950 n.1 (Pa. Cmwlth. 2006) (taking judicial notice of information found on Department website).

[2] A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the petition for review and all reasonable inferences reasonably deducible therefrom.  *Clark v. Beard*,

Dunbar to the Secretary's preliminary objections alleging that the Secretary failed to comply with the Pennsylvania Rules of Appellate Procedure. Upon review, we overrule Dunbar's preliminary objections, we sustain the Secretary's preliminary objections to Dunbar's claims relating to the misconduct procedures and we allow Dunbar's Petition for Review for Declaratory/Injunctive Relief to proceed on a remaining constitutional claim.

Dunbar is an individual incarcerated at the State Correctional Institution at Greene (SCI-Greene). *See* Petition for Review for Declaratory/Injunctive Relief (Petition) ¶ 1; Secretary's Preliminary Objections ¶ 1. A hearing officer found that Dunbar engaged in inmate misconduct when he possessed another inmate's property (legal work) and imposed, as discipline, 30-days' cell restriction. Petition ¶ 17. In his Petition, Dunbar brings three complaints against the Secretary: one complaint relating to the misconduct finding and two complaints regarding the process established in DC-ADM 801.

First, Dunbar complains that the misconduct finding was improper because the hearing officer relied on the misconduct report, an unsworn report, rather than an affidavit or sworn testimony to support the finding. Petition ¶¶ 9 & 15. Dunbar argues that to the extent DC-ADM 801 allows the hearing officer to rely on the misconduct report, the policy violates his federal due process rights "as well as every inmate in the state system, who has been found guilty solely with [sic] unsworn misconduct report." *Id*. ¶ 16. Second, Dunbar complains that DC-ADM 801 is

---

918 A.2d 155, 158, n.4 (Pa. Cmwlth. 2007). The objection tests "the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted." *Id*. We must confine our analysis to Dunbar's Petition for Review for Declaratory/Injunctive Relief and decide whether sufficient facts have been pleaded to permit recovery if the facts are ultimately proven. *Id*. "The demurrer may be granted only in cases which are so free from doubt that a trial would certainly be a fruitless exercise." *Id*.

inconsistent with 37 Pa. Code § 93.10(b), because the policy does not allow inmates to have assistance or witnesses at an informal resolution meeting, but 37 Pa. Code § 93.10(b)(4) requires inmates to have assistance at "both informal and formal hearings." *Id*. ¶¶ 6-7. Third, Dunbar alleges that there is common law right and First Amendment right, U.S. Const. amend. I & Pa. Const. art. I, §§ 9 & 11, to access another prisoner's "judicial record" and DC-ADM 801's rule prohibiting an inmate from possessing "another inmate's legal work" and obtaining "[p]aralegal assistance on the unit (house) and in the library" is inconsistent with established case law. *Id*. ¶¶ 19 & 23.

For relief, Dunbar asks this Court to issue an order to declare "void misconduct reports" and DC-ADM 801 to the extent it allows the hearing officer to rely on the misconduct reports to support findings of guilt in violation of his federal due process rights and the rights of other inmates similarly convicted of misconduct. Petition, Relief Requested ¶¶ B & D. Dunbar seeks an order to declare void provisions of DC-ADM 801 relating to inmate assistance because he maintains it is inconsistent with 37 Pa. Code § 93.10(b). *Id*. ¶ A. Dunbar also seeks to declare void, as unconstitutional and inconsistent with established case law, DC-ADM 801 prohibiting an inmate from possessing another inmate's legal work and thereby prohibiting an inmate from using "paralegals/and jailhouse lawyers[.]" *Id*. ¶ C. Finally, Dunbar seeks a "permanent injunction" to require the Secretary to "correct" DC-ADM 801 to "conform" to existing law. *Id*. ¶ E.

The Secretary responded by filing preliminary objections in the nature of a demurrer to Dunbar's Petition. The Secretary asserts that the Petition should be dismissed because this Court lacks jurisdiction over rulings on inmate misconduct decisions. Secretary's Preliminary Objections ¶ 6(f)-(i). The Secretary further

contends that Dunbar received adequate due process in connection with his misconduct charges; sufficient evidence supported the hearing officer's finding; and Dunbar's discipline "does not amount to an atypical and significant hardship in relation to the ordinary incidents of prison life" and does not implicate a liberty interest. *Id*. ¶ 6(b), (c) & (d). The Secretary argues that DC-ADM 801 is consistent with 37 Pa. Code § 93.10(b). *Id*. ¶ 6(j). The Secretary asserts that with respect to Dunbar's request for a "permanent injunction," he fails to state a claim for "mandamus relief" because Dunbar does not "have a clear legal right not to be issued a misconduct and found guilty after a hearing" and the Secretary has "no corresponding duty." *Id*. ¶ 6(a) & (e). Finally, the Secretary generally objected that Dunbar "failed to allege a violation of the U.S. and State Constitutions by the [Secretary]." *Id*. ¶ 6(k).[3]

Dunbar responded to the Secretary's preliminary objections by filing preliminary objections and asking this Court to strike the Secretary's preliminary objections. *See* Dunbar's Preliminary Objections ¶¶ 1-3, 8-9 & 13. Although the majority of Dunbar's preliminary objections are responses to the Secretary's preliminary objections, Dunbar raises procedural objections that we summarize into two objections. First, Dunbar asserts that the Secretary failed to attach a notice to plead and a verification to his preliminary objections. *Id*. ¶ 3. However, a notice to plead is only required for preliminary objections that cannot be determined from the facts of record as provided in Pennsylvania Rule of Civil Procedure No. 1028(a)(1), (5), (6), (7), or (8). *See* Pa.R.C.P. No. 1028(c)(2), note; *Cooper v. Church of St. Benedict*, 954 A.2d 1216, 1221 (Pa. Super. 2008) (explaining that "[w]hen an issue

---

[3] Upon review of the preliminary objections, it is unclear as to whether the Secretary overlooked the claim raised by Dunbar alleging a violation of his First Amendment rights or if the Secretary is saying that Dunbar's claim, as alleged, is legally insufficient.

4

raised cannot be decided based on facts of record (*i.e.*, the complaint), the preliminary objections must be endorsed with a notice to plead, which requires the plaintiff to admit or deny each allegation of fact supporting the preliminary objections"). Here, the Secretary objected to Dunbar's claims based on legal insufficiency as provided in Rule No. 1028(a)(4), and therefore, no notice to plead was required. With respect to the verification, a verification is required when the pleading contains an "averment of fact not appearing of record in the action or containing a denial of fact." Pa.R.C.P. No. 1024(a). The Secretary did not add facts or deny facts raised by Dunbar in his Petition, as the Secretary relied on law to support his objections. Therefore, we overrule Dunbar's first preliminary objection.

Second, Dunbar objects to the Secretary's preliminary objections arguing that the Secretary failed to comply with Pennsylvania Rules of Appellate Procedure 121(b) and 122(a). *See* Dunbar's Preliminary Objections ¶¶ 8-9. Pennsylvania Rule of Appellate Procedure 121(b) provides, in relevant part, that "[c]opies of all papers filed by any party and not required by these rules to be served by the prothonotary shall, concurrently with their filing, be served by a party or person acting on behalf of that party or person on all other parties to the matter." Pa.R.A.P. 121(b). Rule 122(a) provides for a proof of service and requires it to contain a statement of the date and manner of service and the names of the persons served. Pa.R.A.P. 122(a). Here, the Secretary's preliminary objections were filed with this Court on February 28, 2019, and the certificate of service attached to the filing indicates that counsel made service on Dunbar by first-class mail on the same date. Because the Secretary, in his certificate of service, provided the information required by Rule 122(a) and served his preliminary objections concurrently, we overrule Dunbar's second preliminary objection.

5

We now address the Secretary's preliminary objection in the nature of a demurrer. We agree with the Secretary that we do not have jurisdiction to consider Dunbar's Petition to the extent he is asking this Court to review his misconduct finding. Moreover, we agree with the Secretary that Dunbar fails to identify a personal or property interest to support his due process challenge to DC-ADM 801 and that the policy is consistent with 37 Pa. Code § 93.10(b). Though we sustain the Secretary's preliminary objection relating to the misconduct finding and related process, we cannot dismiss the Petition in its entirety because the Secretary failed to provide this Court with an analysis or explanation as to why Dunbar's constitutional challenge to the provisions of DC-ADM 801 prohibiting Dunbar's access to and possession of another's legal documents are legally insufficient as a matter of law.

We begin our analysis with an overview of our jurisdiction. In *Bronson v. Central Office Review Committee*, 721 A.2d 357 (Pa. 1998), our Supreme Court held that this Court does not have jurisdiction over inmate appeals of decisions by intra-prison disciplinary tribunals because

> [u]nlike the criminal trial and appeals process where a defendant is afforded the full spectrum of rights and protections guaranteed by the state and federal constitutions, and which is necessarily within the ambit of the judiciary, *the procedures for* pursuing inmate grievances and *misconduct appeals are a matter of internal prison administration* and the full panoply of rights due a defendant in a criminal prosecution is not necessary in a prison disciplinary proceeding. . . . Therefore, the [C]ommonwealth [C]ourt does not have appellate jurisdiction . . . over inmate appeals of decisions by intra-person disciplinary tribunals.

6

*Id.* at 358-59 (citations and quotations omitted and emphasis added). Though Dunbar brings his Petition before this Court in our original jurisdiction, our Supreme Court further held in *Bronson* that this Court cannot entertain such matters in our original jurisdiction, except in very limited circumstances. Our Supreme Court explained that

> [p]rison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens . . . [I]ncarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Unless an inmate can identify a personal or property interest . . . not limited by Department of Corrections regulations and which has been affected by a final decision of the [D]epartment the decision is not an adjudication subject to the court's review.

*Bronson*, 721 A.2d at 359 (citations and quotations omitted). Thus, to the extent Dunbar challenges the hearing officer's finding of misconduct, we do not have jurisdiction to consider that finding because misconduct appeals are a matter of internal prison administration. *Id*. at 358-59.

But Dunbar also objects to DC-ADM 801, itself, as opposed to his misconduct finding, and alleges that the policy violates his federal due process rights. Dunbar argues that DC-ADM 801 allows the hearing officer to rely on the misconduct report to support its findings, which resulted in the discipline of 30 days' cell restriction. Petition ¶¶ 16-17. To address Dunbar's constitutional challenge to DC-ADM 801, we must apply a two-step approach. *Bussinger v. Dep't of Corr.*, 29 A.3d 79, 83 (Pa. Cmwlth. 2011). First, we must determine whether the challenged policy infringes upon any of Dunbar's constitutional rights. *Id*. If the answer to that question is in the affirmative, then the second step is to determine whether the policy

7

is nonetheless reasonable, that is, whether it is "reasonably related to legitimate penological interests." *Id.*

Here, Dunbar does not explain how DC-ADM 801 violates his personal or property rights to support his due process claim. *See Shore v. Pa. Dep't of Corr.*, 168 A.3d 374, 383 (Pa. Cmwlth. 2017) (explaining that to maintain a due process challenge, a party must initially establish a deprivation of a protected liberty or property interest). Dunbar alleges that he received discipline of 30 days' cell restriction. Petition ¶ 17. To the extent Dunbar is challenging DC-ADM 801 because of the discipline imposed by the Department, this discipline did not implicate his liberty interest to require due process.

In *Sandin v. Conner*, 515 U.S. 472, 485 (1995), our United States Supreme Court explained that the punishment of incarcerated prisoners effectuates prison management and prisoner rehabilitative goals and that

> [l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. *Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law*.

*Id.* (brackets in original and quotations and citations omitted and emphasis added). Though the discipline imposed on the inmate in *Sandin* was "concededly punitive," the United States Supreme Court held that 30 days in segregated confinement based on a misconduct finding did not implicate the inmate's liberty interest to require 14th Amendment, U.S. Const. amend. XIV, §1, due process protections. *Id.* at 486. The United States Supreme Court explained that the confinement "did not present the

8

type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*.

Likewise, here, the discipline imposed on Dunbar was 30 days' cell restriction resulting from the misconduct finding, which is not an atypical deprivation to create a liberty interest per *Sandin*. Dunbar fails to identify any other personal or property interest of which the Department, through the Secretary, has deprived him.[4] *See Shore*, 168 A.3d at 383; *Bussinger*, 29 A.3d at 83.

Additionally, Dunbar complains that DC-ADM 801 is "unlawful" because it is inconsistent with the regulation at 37 Pa. Code § 93.10(b). Petition ¶ 6. Dunbar asserts that the policy does not allow inmates to have assistance or witnesses at an informal resolution meeting, but the regulation at 37 Pa. Code § 93.10(b)(4) requires inmates to have assistance at both "informal and formal hearings." *Id*. ¶ 7. But Dunbar's argument is incorrect, as he confuses the formal hearing process with the informal resolution process provided by 37 Pa. Code § 93.10(b).[5]

---

[4] Dunbar asserts in his Petition that certain procedures create a "protected liberty interest in the prison context." Petition ¶ 5. To the extent that Dunbar argues that DC-ADM 801 creates a liberty interest, this is not correct. Recently, this Court has explained that DC-ADM 801 contains disclaimer language to "dispel any reasonable expectation that an enforceable right [was] created by the DOC policy." *Dantzler v. Wetzel*, 218 A.3d 519, 523 (Pa. Cmwlth. 2019) (citing *Weaver v. Dep't of Corr.*, 829 A.2d 750, 753 (Pa. Cmwlth. 2003)). DC-ADM 801,VI explicitly provides that it does not create rights in any person.

[5] 37 Pa. Code § 93.10(b) provides:

> (b) Written procedures which conform to established principles of law for inmate discipline including the following will be maintained by the Department and disseminated to the inmate population:
> (1) Written notice of charges.
> (2) Hearing before an impartial hearing examiner or an informal resolution process for charges specified by the Department in the *Department of Corrections Inmate*

The regulation at 37 Pa. Code § 93.10(b)(2) provides that inmates have the option of a "[h]earing before an impartial hearing examiner *or* an informal resolution process for [misconduct] charges specified by the Department in the Department of Corrections['] Inmate Handbook, or any Department document that is disseminated to the inmates." *See* 37 Pa. Code § 93.10(b)(2). The informal resolution process is described in DC-ADM 801 and provides that when an inmate elects to follow the informal resolution process, "[n]o assistance or witnesses are permitted" at the meeting for disposition of the charges. *See* DC-ADM 801 § 2A(4).[6] If an inmate elects the formal hearing process, then he may have assistance from an

> *Handbook*, or any Department document that is disseminated to inmates. *The informal resolution process is described in DC-ADM 801--Inmate Discipline. The process gives inmates the option to meet with staff to resolve a misconduct rather than proceed with a hearing.*
> (3) Opportunity for the inmate to tell his story and to present relevant evidence.
> (4) *Assistance from an inmate or staff member at the hearing if the inmate is unable to collect and present evidence effectively.*
> (5) Written statement of the decision and reasoning of the hearing body, based upon the preponderance of the evidence.
> (6) Opportunities to appeal the misconduct decision in accordance with procedures in the *Department of Corrections Inmate Handbook*.

(Emphasis in original and added.)

[6] Section 2A(4) of DC-ADM 801 provides:

> The Unit Manager/designee, and at least one other member of the Unit Management Team shall meet with the inmate for disposition of the charges within seven working days. The reporting staff member is encouraged, but not required, to attend the meeting. *No assistance or witnesses are permitted at these meetings. . . .*

DC-ADM 801 § 2A(4) (footnote omitted) (emphasis added).

inmate or staff member at the hearing "if the inmate is unable to collect and present evidence effectively." 37 Pa. Code § 93.10(b)(4). DC-ADM 801 and 37 Pa. Code § 93.10(b) plainly provide different processes, *i.e.*, a formal or informal resolution process, and the process elected by the inmate governs his or her options pertaining to witnesses and assistance to resolve the misconduct charge(s). For this reason, the provisions are not inconsistent, and Dunbar cannot state a claim on this basis.

Finally, Dunbar alleges that there is a common law right and First Amendment right to access another prisoner's "judicial record" and that DC-ADM 801's rule prohibiting paralegal assistance is inconsistent with established case law. Petition ¶¶ 19 & 23. Dunbar alleges that he was "sanctioned with 30 days [sic] cell restriction" because he possessed another inmate's legal work but the "United States Supreme Court ruled that a jailhouse lawyer could compose in his cell another inmate['s] (client)['s] [sic] legal work" and once finished the jailhouse lawyer could return the documents to his client. *Id*. ¶ 17. In support, Dunbar relies on *Gilmore v. Lynch*, 319 F. Supp. 105 (N.D. Cal. 1970), *aff'd*, *Younger v. Gilmore*, 404 U.S. 15 (1971).

In *Gilmore*, state inmates challenged the California Department of Corrections['] policy concerning "inmate access to law books, legal material and lay assistance in preparing prisoner writs and complaints" and the procedures of the California state law library regarding circulation of legal materials to inmates. *Gilmore*, 319 F. Supp. at 107. The *Gilmore* Court explained that there were two constitutional provisions invoked by the inmates' challenge, that is, the right to reasonable access to the courts and the Equal Protection Clause, U.S. Const. amend. XIV, §1, as it pertains to indigent and uneducated prisoners. *Id*. at 109. Based on his reliance on *Gilmore* and the facts alleged in his Petition, Dunbar claims that DC-

11

ADM 801 infringes on his constitutional rights because he was punished for acting as a jailhouse lawyer when he was cited for possessing another inmate's property in his cell. Petition ¶¶ 17 & 23.

Additionally, and in further support of his claim, Dunbar asserts that "public judicial records are accessible, and there exists a common law right to copy and [sic] [First] [A]mendment right to access to any other prisoner's judicial record if you pay for them [sic]" and cites *Commonwealth v. Fenstermaker*, 530 A.2d 414 (Pa. 1987), and *Commonwealth v. Martinez*, 917 A.2d 856 (Pa. Super. 2007). Petition ¶ 19. In these cases, the courts addressed the common law right of media to access documents in criminal proceedings. *See Fenstermaker*, 530 A.2d at 421 (holding that newspaper had common law right of access to arrest warrant affidavits that have already been executed); *see also Martinez*, 917 A.2d at 863 (holding that newspaper had common law right of access to letters presented to sentencing court by defense counsel because the court relied upon the letters to impose sentence). As provided in *Fenstermaker* and *Martinez*, there is a common law right to examine public judicial documents and to inspect and copy public records and documents and there is a "qualified First Amendment right to access to certain judicial proceedings and documents." *Martinez*, 917 A.2d at 860 (citing *Fenstermaker*, 530 A.2d at 418). Therefore, Dunbar asserts that he had a constitutional right to possess the other inmate's legal work. Petition ¶¶ 17 & 19.

Though the Secretary asserts in his preliminary objections that Dunbar "has failed to state a claim for mandamus relief" and "has failed to allege a violation of the U.S. and State Constitutions," Preliminary Objections ¶ 6(a) & (k), the Secretary does not explicitly provide any argument or analysis as to why Dunbar's claim regarding paralegal assistance and the right to access records provided in

12

Paragraphs 17 through 23 of his Petition is insufficient as a matter of law or why this Court cannot provide Dunbar with the requested relief. *See Clark v. Beard*, 918 A.2d 155, 158 n.4 (Pa. Cmwlth. 2007) (explaining that the "demurrer may be granted only in cases which are so free from doubt that a trial would certainly be a fruitless exercise"); *see also McClellan v. Health Maint. Org. of Pa.*, 604 A.2d 1053, 1055 (Pa. Super. 1992) (providing that a complaint cannot be dismissed unless the court is convinced that, as a matter of law, no recovery is possible under the facts pleaded).

This Court is required to accept as true "all well-pleaded allegations of material facts as well as all of the inferences reasonably deducible from the facts." *See Gregory v. Pa. State Police*, 160 A.3d 274, 276 (Pa. Cmwlth. 2017); *Smith v. Pa. Emps. Benefit Tr. Fund*, 894 A.2d 874, 879 (Pa. Cmwlth. 2006) (stating that it is well established law in Pennsylvania that "preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings. . . ."). Accepting Dunbar's factual allegations as true (and the reasonable inferences from his allegations), Dunbar had judicial materials belonging to another inmate, his client, in his cell while he was acting as a jailhouse lawyer. Petition ¶¶ 17 & 19. As a result of Dunbar aiding his client, he received a misconduct citation, which resulted in a finding of misconduct and 30 days' cell restriction. *Id*. ¶ 17. Dunbar pleaded that by punishing him for this activity pursuant to DC-ADM 801, the Secretary infringed upon his First Amendment rights, *id*. ¶¶ 17 & 19, which if proven would enable this Court to issue an order to compel the Secretary to stop enforcing DC-ADM 801 in this manner and to void the provisions of DC-ADM 801 that resulted in his discipline. Because the Secretary only claims that Dunbar "failed to allege" a constitutional claim, and we find that he did, this Court will allow that claim to proceed.

For the foregoing reasons, we sustain the preliminary objections raised by the Secretary as to the claims brought in Dunbar's Petition relating to the inmate misconduct process, and we allow Dunbar's Petition to proceed on the claims raised by Dunbar involving the "Prohibition of Paralegal Assistance" enumerated in Paragraphs 17 through 23 of the Petition. The Secretary is ordered to file an answer to these allegations within 30 days of the date of our Order.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory Dunbar,
                Petitioner             :

                         :

          v.                 :

                         :

John E. Wetzel, Secretary for       :
Pa. Dept. of Corrections,         :   No. 75 M.D. 2019
               Respondent     :

PER CURIAM

O R D E R

AND NOW, this 21st day of January, 2020, the preliminary objections filed by Respondent John E. Wetzel, Secretary of Corrections, of the Department of Corrections (Secretary), are SUSTAINED as to the claim raised by Gregory Dunbar (Dunbar) relating to the inmate misconduct process. The preliminary objections filed by Dunbar to the Secretary's preliminary objections are OVERRULED. The Secretary is ordered to file an answer to the remaining claim raised by Dunbar relating to "Prohibition of Paralegal Assistance" as provided in Paragraphs 17 through 23 of the Petition for Review for Declaratory/Injunctive Relief within 30 days of the date of this Order.