IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Gerald Waters, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 18 M.D. 2024 |
| | : | Submitted: July 7, 2025 |
| Pennsylvania Department of | : | |
| Corrections and Secretary Dr. | : | |
| Laurel R. Harry, | : | |
| Respondents | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                    FILED:  August 21, 2025

Gerald Waters (Waters), *pro se*, has filed a petition for review addressed to this Court's original jurisdiction, alleging that the Pennsylvania Department of Corrections (Department) and Secretary Dr. Laurel R. Harry (Secretary) (together, Respondents) confiscated his personal property without compensation in violation of due process of law.  Respondents have filed a preliminary objection in the nature of a demurrer.  We sustain Respondents' preliminary objection and dismiss the petition for review.

Waters is incarcerated at the State Correctional Institution at Forest.  On January 12, 2024, he filed a petition invoking this Court's original jurisdiction pursuant to the Judicial Code, 42 Pa. C.S. §§761-764,[1] and seeking judicial review "of a final order of . . . [the] Department[.]"  Petition at 1.  The petition alleges that

---

[1] These provisions relate to this Court's original jurisdiction, appeals from courts of common pleas, direct appeals from government agencies, and election contests and other matters.

ViaPath Technologies d/b/a/ Global Tel-Link (Tel-Link) restricted Waters' access to 18 songs by the artist HSC Jmeanmug, which Waters had purchased at the prison commissary using "link units" at the cost of $5.00 per unit, for a total of $35.00. Waters made this purchase before the Department informed inmates that media produced by the label "HSC Jmeanmug" would be restricted from all state correctional institutions "due to security concerns" and that no refunds would be provided. Petition at 2. Waters did not receive a refund of his $35.00 expenditure.

Waters filed a grievance that was denied. In response, the Department provided Waters two memos, one written by Tel-Link and the other written by the Department, about restricted music and refunds. The Tel-Link memo, dated April 24, 2020, stated that "[i]f a media track is restricted by [Tel-Link] you will be refunded. . . . If the media items were restricted by the [Department] you will not be refunded." Petition, Exhibit at 6. The Department memo, dated September 28, 2023, stated that "as of September 21, 2023, the Department [] has restricted **ALL** media produced by the Label 'HSC Jmeanmug' at all State Correctional Institutions due to security concerns" and, further, no refunds are available "for media restricted by the Department[.]" *Id*. at 7. Waters' next level appeal was denied. The Facility Manager explained that Waters had not submitted "any new pertinent evidence to support [his] allegations that [Tel-Link] must reimburse [him] for music purchased prior to any [Department] restrictions." *Id*. at 3. Waters then sought further review from the Chief Grievance Officer, which was denied.

Waters then filed a petition for review in this Court. The petition alleges that Respondents have deprived Waters of property "without any due process or dilligence [sic] highlighted above under DC-154(A) [(Confiscation Items Receipt (Inmate))]." Petition at 3, ¶4. The Department has improperly allowed a private

2

vendor to create a Department policy under which it keeps the funds expended by inmates using link units. Further, HSC Jmeanmug is "not a legal entity" that sold unlicensed music. Petition at 3-4, ¶7. "The copyright infringement of music artists such as Beanie Sigel, Jay-Z, [and] Meek Mill [] under [Tel-Link's] platform violates [Section 43(a) of the] Lanham Act[,] 15 U.S.C. §1125(a)[.]"[2] Petition at 4, ¶11. Thus, Tel-Link profited, not only from the copyright infringements, but from its failure to follow the Department's policy on restricted media. The Department's policy on denying reimbursement for restricted tracks has not been promulgated in accordance with the Commonwealth Documents Law[3] and, thus, is invalid.

Waters' petition ends with the following statements:

17. [Waters] has been and is being deprived out of commissary purchase without due process and department policy on confiscation.

IV. CONCLUSION

WHEREFORE, for all the foregoing reasons, [Waters] seeks review of the final order of the Department [] by and through the [R]espondents; prays for an Order granting relief in the amount of $35.00 for the confiscated media mentioned herein above, also, the total cost of litigating this proceeding, and any other relief this Court deems appropriate.

Petition at 5.

Respondents filed a preliminary objection in the nature of a demurrer, challenging the legal sufficiency of the petition. First, Respondents argue that the petition is legally insufficient because it seeks judicial review of the Department's

---

[2] The Lanham Act is the name commonly given to the Trademark Act of 1946, 15 U.S.C. §§1051-1150.

[3] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§1102-1602, and 45 Pa. C.S. §§501-907, which, collectively, are known as the "Commonwealth Documents Law." It requires notice and comment before an agency can promulgate, amend, or repeal regulations.

grievance denial. However, grievance decisions are not subject to appellate review. Second, Respondents argue that the petition cannot be reviewed in the Court's original jurisdiction. To invoke this Court's original jurisdiction, the pleading must state a constitutional or statutory violation because agency policies do not create enforceable rights. Even so, the Lanham Act does not apply to Respondents because they are not in the business of music. Finally, Respondents argue to the extent Waters bases his claim on the Department's misconduct policy, the petition fails to state a claim because the Department's disclaimer language in the policy dispels any reasonable expectation that an enforceable right is created by the policy.

Waters responds that inmates retain constitutional protections for personal or property interests notwithstanding incarceration. He argues that his petition for review states a claim for a violation of his right to due process because he alleges that the Department, acting with Tel-Link, has confiscated his property without just compensation.[4] Waters further responds that the Department violated the Lanham Act. He contends that the Department is responsible for the "refund [of] mistakes on copyright/trademark infringement that is passed on to the inmate/prisoner population." Waters Brief at 12.

---

[4] Waters invokes the Fifth Amendment to the United States Constitution, which states that private property shall not "be taken for public use, without just compensation." U.S. CONST. amend. V. It is applicable to the states through the Fourteenth Amendment. Waters does not allege that his property was taken for a public use. Rather, he alleges that he was deprived of his personal property at a direct cost to him of $35.00. Although Waters uses the term "just compensation" to refer to his loss of $35.00, the use of this term does not implicate the Fifth Amendment.

The Commonwealth, its officials, and employees acting within the scope of their duties, enjoy sovereign immunity and are immune from suit unless the Legislature has specifically waived the immunity. 1 Pa. C.S. §2310. The Legislature has waived sovereign immunity for a claim for damages arising out of a Commonwealth party's "negligent act" enumerated in Section 8522(b) of the Judicial Code, 42 Pa. C.S. §8522(b). Because Waters does not bring a negligence claim against the Department, his claim for damages arising from the confiscation is barred by sovereign immunity.

In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that we may draw from the averments. *Meier v. Maleski*, 648 A.2d 595, 600 (Pa. Cmwlth. 1994). The Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. *Id*. We may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on the claim, and any doubt must be resolved in favor of the petitioner. "We review preliminary objections in the nature of a demurrer under the above guidelines and may sustain a demurrer only when a petitioner has failed to state a claim for which relief may be granted." *Armstrong County Memorial Hospital v. Department of Public Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013).

Inmates cannot seek judicial review of a final decision on a prison grievance. In *Bronson v. Central Office Review Committee*, 721 A.2d 357, 358-59 (Pa. 1998), the Pennsylvania Supreme Court held that "the procedures for pursuing inmate grievances and misconduct appeals are a matter of internal prison administration" and, therefore, courts do not have appellate jurisdiction over "decisions by intra-prison disciplinary tribunals." To the extent Waters' petition appeals an internal grievance decision, this Court lacks appellate jurisdiction.

*Bronson* also addressed this Court's original jurisdiction over petitions challenging prison conditions. In this regard, unless the inmate can "'identify a personal or property interest,'" not limited by the Department's regulations, which interest has been affected by the Department, there is no judicial review. *Bronson*, 721 A.2d at 359 (quoting *Lawson v. Department of Corrections*, 539 A.2d 69, 71 (Pa. Cmwlth. 1988)).

5

Here, the petition alleges Waters' music was confiscated, as was his $35.00, without due process of law or just compensation. Further, the confiscation was done under a policy not promulgated in compliance with the Commonwealth Documents Law.

Recently, this Court addressed the Department's policy restricting music acquisitions in *Bayete v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 20 M.D. 2024, filed April 11, 2025) (unreported).[5] There, Bayete, an inmate, used $19.10 in link units at the Department's commissary to purchase music by Jmeanmug from Tel-Link. Bayete filed a grievance complaining that all music by the label "HSC Jmeanmug" had been restricted at all state correctional institutions "due to security concerns" and that no refunds would be issued. *Id.*, slip op. at 2. After his grievance was denied, Bayete filed a petition for review addressed to this Court's original jurisdiction, asserting that his personal property was confiscated without due process.[6]

This Court held that the Department's post-deprivation grievance system provided a constitutionally adequate due process and remedy in matters involving the confiscation of inmate property, including music purchases. We

---

[5] An unreported memorandum opinion of this Court may be cited for its "persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

[6] The Fourteenth Amendment to the United States Constitution precludes states from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV, §1. Similarly, article I, section 1 of the Pennsylvania Constitution protects life, liberty and property interests. PA. CONST. art. I, §1 ("All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."). Additionally, article I, section 11 of the Pennsylvania Constitution provides, in pertinent part, that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods or reputation shall have a remedy by due course of law, and right and justice administered without sale, denial or delay." PA. CONST. art. I, §11.

explained that incarceration limits many privileges and rights, which is necessary in our penal system. *Bayete*, slip op. at 8-9 (citing *Bronson*, 721 A.2d at 359). Further, "the Department has broad discretion to fashion policies about what property inmates may possess, and to modify those policies as security needs evolve or change." *Bayete*, slip op. at 9 (citing *O'Toole v. Department of Corrections*, 196 A.3d 260, 267 (Pa. Cmwlth. 2018)). The Department must be able "to enforce reasonable rules of internal prison management to ensure public safety and prison safety." *Bayete*, slip op. at 9 (citing *Small v. Horn*, 722 A.2d 664, 669-70 (Pa. 1998)).

In *Bayete*, slip op. at 9, this Court questioned "what type of property interest [Bayete] had after the Department concluded the music in question was restricted for security reasons, a decision that was within the Department's discretion as an internal prison matter." Nevertheless, this Court assumed that Bayete's pleading established an enforceable property right and, therefore, considered the type of process due in this context. In that regard, the Court observed "[p]ost-deprivation remedies have long been held to satisfy the due process clause where the situation dictates that the state take immediate action, or it is impracticable to provide any meaningful pre-deprivation process." *Id.* at 10. Confiscation of an inmate's property "requires only the existence of an adequate post-deprivation remedy because it is not feasible for a prison to provide a hearing prior to taking property that is perceived to be contraband or against prison regulations." *Id*. (quoting *Shore v. Department of Corrections*, 168 A.3d 374, 383 (Pa. Cmwlth. 2017)). We concluded that the Department's post-deprivation grievance system provided to, and used by, Bayete to challenge the confiscation of his property constituted a meaningful post-deprivation remedy that satisfied due process.

Here, as in *Bayete*, Waters asserts that his music was confiscated on grounds that it presented a security risk. Following the confiscation, Waters used the prison grievance system to challenge the confiscation. The present case is factually indistinguishable from *Bayete*, which we find persuasive. Adopting the holding in *Bayete*, we hold that Waters' petition does not state a due process claim.

Finally, we reject Waters' claim that the Department's policy on restricted music tracks was not promulgated in compliance with the Commonwealth Documents Law, which promotes "public participation in the promulgation of a regulation." *Germantown Cab Company v. Philadelphia Parking Authority*, 993 A.2d 933, 937 (Pa. Cmwlth. 2010). A regulation is a binding norm with the force and effect of law. *Pennsylvania School Boards Association, Inc. v. Mumin*, 317 A.3d 1077, 1100-01 (Pa. Cmwlth. 2024). An agency's statement of policy does not have this effect and is exempt from the Commonwealth Documents Law. Sections 102, 201-202 of the Commonwealth Documents Law, 45 P.S. §§1102, 1201-1202. *See also Texas Keystone Inc. v. Pennsylvania Department of Conservation and Natural Resources*, 851 A.2d 228, 239 n.18 (Pa. Cmwlth. 2004) ("A statement of policy does not have the force of law[,]" and "the Commonwealth Documents Law does not require an agency to publish statements of policy[.]").

For these reasons, we sustain Respondents' preliminary objection and dismiss Waters' petition for review.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gerald Waters,
    Petitioner

    v.       :  No. 18 M.D. 2024

Pennsylvania Department of
Corrections and Secretary Dr.
Laurel R. Harry,
    Respondents

## **O R D E R**

AND NOW, this 21st day of August, 2025, the preliminary objection of the Pennsylvania Department of Corrections and Secretary Dr. Laurel R. Harry to the petition for review filed by Gerald Waters is SUSTAINED, and the petition for review is DISMISSED.

            MARY HANNAH LEAVITT, President Judge Emerita